THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARJORIE J. REED, Defendant-Appellant.

Fourth District    No. 16323

Opinion filed January 23, 1981.

John E. Gambill, of Allen & Korkowski & Associates, of Rantoul, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Paula G. Hudson, Assistant State's Attorney, of Urbana), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant appeals from a jury verdict finding her guilty of driving while under the influence of intoxicating liquor (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(a)). She contends the trial court erred (1) in denying her motion to suppress the results of a breath alcohol test, (2) in denying her motion to suppress alleged admissions of defendant, (3) in denying her motion for a mistrial based on the contention that the prosecutor did not follow up properly after laying the foundation for impeachment by prior inconsistent statement, and (4) in denying her motion to dismiss the driving-under-the-influence charge on double jeopardy grounds. She also contends reversible errors were committed in the State's closing argument. We find no reversible error.

On December 22, 1979, the defendant was involved in an automobile collision on Springfield Avenue in Champaign, Illinois. The defendant was given a traffic ticket for driving while under the influence of intoxicating liquor and a ticket for running a red light. A trial by jury was had on March 17, 1980. After two witnesses testified that the defendant ran the red light, the defendant withdrew her plea of not guilty to running a red light and entered a plea of guilty to that count. Subsequently, defendant was convicted on a charge of driving while under the influence of intoxicating liquor. Defendant was sentenced on April 8, 1980, to 12 months of probation in addition to a fine of $100 plus costs and 30 hours of public

service. A petition to reconsider was filed May 2, 1980, and denied May 6, 1980. Notice of appeal was filed May 6, 1980.

Shortly after the defendant's arrest, she submitted to a breath alcohol test. There were two tests administered, each registering .24% by weight of alcohol in the defendant's blood. Prior to the commencement of the trial, the defendant filed a motion to produce the test ampoules used in the performance of the breath test.[1] The prosecution admitted that the ampoules were not available since they had been destroyed in accordance with standard procedure. Defendant then filed a motion to suppress the results of the breath tests based on the destruction of evidence that could have been beneficial to the defendant. This motion was denied.

Defendant argues that *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, which held that suppression by the prosecution of material evidence favorable to the accused denies defendant due process of law, demands an interpretation of section 11—501(g) of the Illinois Vehicle Code which would require the suppression of the results of the breathalyzer tests in the instant case. Section 11—501(g) provides:

> "Upon the request of the person who submitted to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests must be made available to him or his attorney." Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(g).

*People v. Hitch* (1974), 12 Cal. 3d 641, 527 P.2d 361, 117 Cal. Rptr. 9, and *Lauderdale v. State* (Alas. 1976), 548 P.2d 376, are cited as analogous cases in which suppression of the test results was found to be the proper remedy where test ampoules were not available. Defendant further quotes findings made in *Van Halen v. Municipal Court* (1969), 3 Cal. App. 3d 233, 83 Cal. Rptr. 140, to show that the ampoules, if preserved, would be a source of potentially exculpatory evidence.

This same issue was raised in *People v. Godbout* (1976), 42 Ill. App. 3d 1001, 356 N.E.2d 865. That court concluded it could not determine if due process had been violated there without evidence in the record regarding the feasibility of preserving the ampoules and the potential for obtaining exculpatory evidence from preserved ampoules. Similarly, since no such evidence was offered at trial in this case, we cannot determine if this particular defendant was denied due process or if procedures in Illinois are generally violative of due process in cases of this type.

While several States have found due process rights violated by the admission of breathalyzer test results where the ampoules were unavailable to the defense due to destruction by the State, other States have found no violation. The results reflect differing opinions on whether such

---

[1] "Ampoules are sealed vessels containing a solution of potassium dichromate, which are replaced for each operation of the breathalyzer apparatus." *People v. Godbout* (1976), 42 Ill. App. 3d 1001, 1004 n.2, 356 N.E.2d 865, 869 n.2.

evidence would be material (compare *State v. Canaday* (1978), 90 Wash. 2d 808, 585 P.2d 1185, with *State v. Michener* (1976), 25 Ore. App. 523, 550 P.2d 449), and whether the ampoules could produce evidence favorable to the accused. (Compare *State v. Teare* (1975), 135 N.J. Super. 19, 342 A.2d 556, and *State v. Shutt* (1976), 116 N.H. 495, 363 A.2d 406, with *Hitch; Lauderdale; Garcia v. District Court* (1979), 197 Colo. 38, 589 P.2d 924; *Scales v. City Court* (1979), 122 Ariz. 231, 594 P.2d 97, and *People v. Richter* (Dist. Ct. 1979), 102 Misc. 2d 285, 423 N.Y.S. 2d 610.) The scientific evidence produced at trial to determine if ampoules could be preserved and what information could be obtained from preserved ampoules also varies. This variance may be due in some instances to differing types of ampoules or procedures used in breathalyzer tests in the various States. See *Shutt*.

In the present case, no evidence was offered which would enable the trial court to make findings and to determine if due process was violated. Therefore, we have no findings to review. Furthermore, due to the variances reflected in opinions from other jurisdictions, taking judicial notice of such opinions would be futile in the attempt to resolve this issue in Illinois. The one consistent factor in all cases which have considered defendant's due process contention is that no case has found a due process violation without evidence and findings at the trial level regarding the feasibility of preserving the ampoules and the potential usefulness of preserved ampoules to the defense. As in *Godbout*, where the same argument was made, we cannot answer defendant's contention without such evidence.

Defendant's second contention is that the court should have suppressed certain statements allegedly made to the officer who issued the traffic ticket. Prior to trial, defendant filed a motion to suppress these alleged admissions based upon the failure to give her the warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. At the hearing on the motion to suppress, Officer Schell testified that as he was explaining and reading a form requesting defendant to submit to a breath analysis, she three times volunteered the information that she was drunk: "I'm drunk, I will admit that"; "Yes, I know I'm drunk, I've been at a party all night"; "I know I'm thoroughly drunk." Officer Schell stated at the motion to suppress hearing that none of defendant's statements was in response to any questions that he had asked her nor did he believe that he had made any statements prior to the defendant's statements which might have elicited such responses. Defendant testified at the suppression hearing that questions were asked of her prior to the time of the *Miranda* warnings and that she could not remember for sure whether she had volunteered the alleged admissions.

Approximately an hour after these statements were made, the Miranda warnings were given and Officer Schell asked questions from the alcohol influence report form. There was some confusion as to whether the warnings were given before this questioning was commenced. The court denied the motion, finding that whether the *Miranda* warnings were given before the latter questioning commenced "seems hardly significant in relationship to" the three statements given an hour earlier.

*Miranda* is cited by defendant for the proposition that the warnings must be given prior to in-custody questioning. However, in *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1689-90, the Supreme Court defined the type of interrogation to which *Miranda* was addressed. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." The Supreme Court noted that the latter portion of the definition focused on the suspect's perceptions rather than the intent of the police.

■■ In the present case it is not clear that there was questioning of any kind by Officer Schell at the time defendant made her admissions. The form requesting submission to a breath analysis test which Officer Schell read to defendant reveals nothing which would elicit the responses she gave. Whatever questions there may have been, the record supports the trial judge's denial of the motion since there are no indications of words or actions reasonably likely to elicit an incriminating response. Rather, the record reveals a direct denial of such words or actions by Officer Schell. The denial of the motion was not error.

■■ Defendant's third contention is that the prosecutor failed to properly follow up during cross-examination of her at trial after the following exchange:

"Q. But you're saying that you didn't say, I'm drunk, I'll admit that?

A. No, I did not say that."

This exchange is contended to have laid the foundation for impeachment by a prior inconsistent statement. Where a witness denies having made a prior inconsistent statement, it is incumbent upon the cross-examiner to offer evidence that the prior statement was in fact made. (*People v. Moore* (1973), 54 Ill. 2d 33, 294 N.E.2d 297, *cert. denied* (1973), 412 U.S. 943, 37 L. Ed. 2d 404, 93 S. Ct. 2787.) However, a failure to prove the impeachment does not of necessity constitute reversible error. In view of testimony at trial by Officer Schell of similar admissions by defendant, as

well as the results of the breath analysis test, the above exchange was harmless error. See *People v. Williams* (1969), 105 Ill. App. 2d 25, 245 N.E.2d 17.

Next, defendant argues she was placed in double jeopardy by the continuing prosecution and subsequent conviction for driving while under the influence after pleading guilty to running a red light in violation of section 11—306(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—306(c)). Defendant pleaded guilty to the latter offense after trial commenced. At that time she filed a motion to dismiss the former offense, urging a double jeopardy basis. The motion was denied. Her contention is that the running of the red light was probative evidence of her intoxication and therefore the same evidence would be used to convict her of both offenses.

Mere utilization of the same evidence to prove two offenses does not necessarily make the offenses the same for double jeopardy purposes. The test is "whether each provision requires proof of a fact which the other does not." (*Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182.) The apparent simplicity of this formulation belies the somewhat subtle but longstanding confusion it has created. The United States Supreme Court made its most recent attempt to clarify this test in *Illinois v. Vitale* (1980), ___ U.S. ___, 65 L. Ed. 2d 228, 100 S. Ct. 2260. *Vitale* indicates that offenses are not the same for double jeopardy purposes unless one of the offenses "is always a necessary element" of the other offense or unless, in the facts of the particular case, it is necessary to rely on and prove the lesser offense to establish an element of the greater offense as in cases involving felony murder and the underlying predicate felony. ___ U.S. ___, ___, 65 L. Ed. 2d 228, 235, 237-38, 100 S. Ct. 2260, 2265, 2267.

In *Vitale*, an automobile operated by the minor respondent struck and killed two pedestrians. As a consequence of this incident, Vitale was convicted of failing to reduce speed to avoid an accident. (Ill. Rev. Stat. 1973, ch. 95½, par. 11—601.) The next day a petition for adjudication of wardship of the minor respondent was filed alleging involuntary manslaughter while recklessly driving an automobile. (Ill. Rev. Stat. 1973, ch. 38, par. 9—3.) The circuit court dismissed the petition and our supreme court affirmed, holding that the Federal double jeopardy clause barred the prosecution for involuntary manslaughter.

On *certiorari*, the United States Supreme Court stated unequivocally that "[t]he point is that if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test." ___ U.S. ___, ___, 65 L. Ed. 2d 228, 237, 100 S. Ct. 2260, 2267.

The court continued, in support of this unequivocal statement, by stating:

"The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution.

## IV

If, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the 'same' under *Blockburger* and Vitale's trial on the latter charge would constitute double jeopardy under *Brown v. Ohio*." (___ U.S. ___, ___, 65 L. Ed. 2d 228, 237-38, 100 S. Ct. 2260, 2267.)

Notwithstanding the unequivocal earlier statement and following supportive statements, the court continued:

"In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial * * *." (___ U.S. ___, ___, 65 L. Ed. 2d 228, 238, 100 S. Ct. 2260, 2267.)

The court subsequently reiterated this latter interpretation of the *Blockburger* test:

"[I]f in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution." (___ U.S. ___, ___, 65 L. Ed. 2d 228, 238, 100 S. Ct. 2260, 2267.)

The court reinforced the equivocal meanings of the above quotes by concluding:

"Because of our doubts about the *relationship* under Illinois law between the crimes of manslaughter and a careless failure to reduce speed to avoid an accident, *and because* the reckless act or acts the State *will rely on* to prove manslaughter are still unknown, we vacate the judgment of the Illinois Supreme Court and remand the case to that court for further proceedings not inconsistent with this opinion." (Emphasis added.) ___ U.S. ___, ___, 65 L. Ed. 2d 228, 238-39, 100 S. Ct. 2260, 2267-68.

Our supreme court interpreted *Vitale* in *People v. Zegart* (1980), 83 Ill. 2d 440, 415 N.E.2d 341. Choosing not to ignore the latter portion of the *Vitale* opinion which indicated that one offense need not always be included in the other offense to constitute a substantial claim of double jeopardy, the *Zegart* court held that a prior conviction for crossing over a highway dividing median in violation of section 11—708(d) of the Illinois Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 11—708(d)) barred a subsequent trial on a charge of reckless homicide arising out of the same incident. (Ill. Rev. Stat. 1975, ch. 38, par. 9—3(a).) Reckless homicide is defined the same as involuntary manslaughter except that where "the cause of death consists of the driving of a motor vehicle" the offense is known as reckless homicide. Reckless homicide requires the element of recklessness. The State filed an amended bill of particulars in which it revealed it intended to introduce evidence that the defendant crossed the median strip "in support of the allegation that the defendant was driving too fast for conditions, failing to reduce speed to avoid a collision, failure to drive a vehicle in the proper lane of the roadway and improper passing on the left." (*Zegart*, 83 Ill. 2d 440, 445.) The court concluded this was a concession by the State "that it intends to sustain the manslaughter charge by introducing evidence that defendant drove across the median." (*Zegart*, 83 Ill. 2d 440, 445.) Citing *Vitale*, the court concluded that while "reckless homicide does not 'always' entail proof of driving across a median strip, under the particular facts in this case" it would be a violation of the double jeopardy clause of the fifth amendment of the United States Constitution for the State "to use the factual basis which led to the first conviction as the basis for the second conviction." *Zegart*, 83 Ill. 2d 440, 445.

■■ The *Vitale* assertion that a defendant would have a "substantial claim of double jeopardy" if the State found it "necessary to prove" the less serious offense to sustain the more serious offense, seems to require, as a bottom line, that proof of the lesser offense be "necessary" to sustain the more serious offense. Stated conversely, this would mean that if a conviction of the more serious offense could stand in a case without proof of the lesser offense, the double jeopardy claim would be vitiated. Thus, in *Zegart*, where a conviction for reckless homicide could not have been sustained without evidence of crossing the median, the prior conviction for crossing the median barred the subsequent prosecution for reckless homicide. In the present case, however, we believe the conviction for driving under the influence is sustained by the breathalyzer results and admissions of defendant, rendering evidence of running the red light superfluous. Therefore, the present defendant does not have even a "substantial" double jeopardy claim.

Finally, defendant urges reversible error was committed in the pros-

ecutor's closing argument. At one point, the prosecutor commented that defendant accused Officer Schell of taking payoffs. This remark was objected to and the objection sustained since there was no evidence of such an accusation. The court then properly instructed the jury that any comments made by counsel during argument which are not supported by the evidence should be disregarded by the jury. Defense counsel then made a motion for mistrial alleging the statement was prejudicial. The court denied the motion.

■■ Although this comment constituted error, the prompt sustained objection and admonishment to the jury were sufficient to cure any prejudice. See *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200, 1206.

Two other statements in the prosecutor's closing argument are urged to be prejudicial errors. However, no objection was made below to either of these statements. In view of the testimony regarding admissions by defendant and the results of the breath analysis test, we do not believe these comments were "[p]lain errors or defects" which we should consider where the trial court did not have the opportunity to correct any prejudice. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).) "Otherwise, counsel, by not giving the court the opportunity to prevent or correct error at trial, will gain the advantage of obtaining a reversal through his own failure to act, either intentionally or inadvertently." *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 239.

Affirmed.

TRAPP, P. J., and WEBBER, J., concur.