Sara C. HUNTER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted April 21, 1981.

Decided May 12, 1981.

Reargument Denied June 10, 1981.

Richard E. Fairbanks, Jr. (argued), Richard M. Baumeister, and Edward C. Pankowski, Jr., Asst. Public Defenders, Wilmington, for defendant below, appellant.

Charles M. Oberly, III, Asst. State Pros., and Bartholomew J. Dalton, Deputy Atty. Gen. (argued), Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY, McNEILLY, QUILLEN and HORSEY, Justices, constituting the Court en Banc.

HERRMANN, Chief Justice:

This case, decided by this Court on June 24, 1980 (*Hunter v. State*, Del.Supr., 420 A.2d 119), is now before this Court on vacating of judgment and remand by the Supreme Court of the United States (in summary disposition of Certiorari 80–283) "for further consideration in light of *Albernaz v. United States*," —— U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). *Delaware v. Hunter*, —— U.S. ——, 101 S.Ct. 1689, 68 L.Ed.2d 190 (1981).

Our reconsideration of *Hunter*, under the mandate, is limited to the double jeopardy issue to which *Albernaz* applies.

In *Hunter*, the defendant was convicted of first-degree assault under 11 *Del.C.* § 613(1) and possession of a deadly weapon during the commission of a felony under 11 *Del.C.* § 1447.[1] Before entering into an examination of whether cumulative punishments for the two offenses under § 613(1) and § 1447 were constitutionally permissible under the Double Jeopardy Clause of the

Fifth Amendment, "we considered preliminarily the question of whether the General Assembly intended to subject the defendant to multiple penalties for the single criminal act in which she engaged." 420 A.2d at 124. We there concluded that such was the legislative intent; that "§ 1447 creates an offense distinct from the underlying § 613(1) felony of Assault First Degree, and that is was the legislative intent to subject this defendant to multiple penalties for the single criminal act in which she engaged"; and that, accordingly, we reached "the constitutional double jeopardy issue and the need to evaluate § 613(1) and § 1447 in the light of the *Blockburger* [*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306] test." 420 A.2d at 124. And then, making the analysis and following what we thought were the teachings of *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); and *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), we concluded in *Hunter* that the *Blockburger* test was not satisfied; that under the test as applied in the instant case, for "double jeopardy purposes the two offenses are undoubtedly 'the same' "; and that, therefore, multiple punishments for the "same offense" had been imposed here in violation of the Double Jeopardy Clause. 420 A.2d at 125.

This Court unanimously agreed upon that result in the original *Hunter* opinion.

\*　　\*　　\*　　\*　　\*　　\*

Subsequent to the filing of the original *Hunter* opinion on March 14, 1980, the United States Supreme Court decided *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), on April 16, 1980. A motion for reargument and clarification

---

1. Reference is made to the *Hunter* opinion for the facts and the texts of the Statutes involved. 420 A.2d at 121–122.

was then pending in the instant case on another issue. In view of the cloud cast by *Whalen* upon the original *Hunter* opinion regarding the double jeopardy issue, this Court, *sua sponte*, requested supplemental briefing regarding the effect of *Whalen* upon the conclusions we had reached on the double jeopardy issue. Supplemental Opinions were filed in this case upon the Motion for Reargument, on June 24, 1980. 420 A.2d at 127–34.

In the Supplemental Opinions, the majority stated:

"Before reaching the substance of the matter, we are compelled to note that increasing uncertainty exists in this area of the law, resulting from the somewhat ambiguous and to us, at least, puzzling pronouncements in recent United States Supreme Court cases. Compare *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). We are not alone in this posture. See e. g., *People v. Hughes*, 85 Mich.App. 674, 272 N.W.2d 567 (1978); Western & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Supreme Court Rev. 81, 113. We thought the Supreme Court cases, and quotations therefrom, cited in the foregoing opinion in this case, constituted settled law on the subject of double jeopardy. But the Court's recent majority decision in *Whalen* seems to have added a new and, perhaps, contrary analysis structure to cumulative punishment cases without any attempt to clarify, distinguish, or over-rule its prior decisions upon the basis of which the foregoing opinion was formulated. It is within this vacuum that we are asked to decide the effect of *Whalen* on the instant case.

"We distinguish *Whalen*. That case concluded that Congress had not intended to punish doubly for the crimes of rape and felony murder. Thus, the analysis *stopped with* the determination that the District of Columbia Court of Appeals had exceeded its legislative authorization

in affirming consecutive sentences. On the other hand, our analysis here does not terminate but, in fact, only begins with a determination of the legislative intent behind § 613 and § 1447. We are presented with a question wholly different than that posed in *Whalen*. There, the concern was the scope of the Double Jeopardy Clause when cumulative punishment for the identical crime is imposed contrary to the intent of the Congress. Here, we are confronted with the question of the scope of the Double Jeopardy Clause when cumulative punishment is meted out for the 'same offense' consistent with the will of the General Assembly. In view of this governing distinction, we cannot apply to this case certain conclusions and statements in the various opinions in *Whalen* which we find ambiguous, to say the least, when read in the light of previous opinions of the Supreme Court which it has not renounced."

420 A.2d at 128–29 (footnote omitted). And after considerable self-imposed reconsideration in the light of *Whalen*, the majority of this Court concluded:

"We are not convinced that *Whalen* controls the instant case in view of the ambiguities contained therein which we find in unexplained conflict with prior double jeopardy principles which we thought settled. We are unwilling to abandon those principles until the United States Supreme Court has more clearly and definitely abandoned them."

420 A.2d at 130 (footnote omitted).

Justice Quillen dissented in the Supplemental Opinions, joined by Justice McNeilly, stating:

"There is no more confusing area of criminal and constitutional law than the issue of double jeopardy and the related problems of statutory construction. The majority opinion tackles the thicket boldly and I depart from the views it expresses with respect. At the time of the original decision in this case on March 14, 1980, I expressed the view that the result reached by the opinion of the Chief Jus-

tice on behalf of the Court '[was] constitutionally mandated under current standards.' I now find it necessary to withdraw that concurring opinion and to take a most hesitant different view from that of the majority in light of the recent decision of the United States Supreme Court in *Whalen v. U. S.*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). I enter the fray hesitantly because, unlike Mr. Justice Rehnquist, I find the double jeopardy opinions of his Court far from clear."

420 A.2d at 132 (footnote omitted) (Quillen, J., dissenting). The dissent concluded:

"As I read *Whalen*, the Court has taken a turn, not ninety degrees, but decipherable. There has been a recognition that recent opinions have been '[demanding] more of the Double Jeopardy Clause than it is capable of supplying.' Western & Drubel, Toward a General Theory of Double Jeopardy, 1978 *Supreme Court Review*, 81, 113. Furthermore, as I see it, there is implicit in the *Whalen* majority some support for the proposition that cumulative punishments may be imposed in a single trial if Congress defined the offenses separately and authorized cumulative punishments. See also *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Based on this reading, which I hope rises above blind speculation to at least educated surmise, I conclude the concept of double jeopardy as embodied in the Fourteenth Amendment of the United States Constitution does not proscribe the consecutive punishments which were imposed in this case."

420 A.2d at 134 (footnote omitted) (Quillen, J., dissenting).

Thus the issue stood in this State (subject to a stay by this Court on all affected cases pending the outcome of the State's petition for certiorari) until the United States Supreme Court acted upon that petition by vacating this Court's judgment in this case and remanding the cause for reconsideration in the light of *Albernaz*, decided March 9, 1981.

\* \* \* \* \* \*

We now have the enlightenment of the opinion of the Court in *Albernaz*, as set forth in its final paragraphs:

"Having found that Congress intended to permit the imposition of consecutive sentences for violations of § 846 and § 963, we are brought to petitioners' argument that notwithstanding this fact, the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution precludes the imposition of such punishment. While the Clause itself simply states that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb,' the decisional law in the area is a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator. We have previously stated that the Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishments for the same offense.' *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted).

"Last Term in *Whalen v. United States, supra*, this Court stated that 'the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishment the Legislative Branch has authorized.' 445 U.S., at 688, 100 S.Ct., at 1436; *id.*, at 696, 100 S.Ct., at 1440 (WHITE, J., concurring in part and concurring in the judgment); *id.*, at 696, 100 S.Ct., at 1440 (BLACKMUN, J., concurring in the judgment). In determining the permissibility of the imposition of cumulative punishment for the crime of rape and the crime of unintentional killing in the course of rape, the Court recognized that the 'dispositive question' was whether Congress intended to authorize separate punishments for the two crimes. *Id.*, at 689, 100 S.Ct., at 1436. This is so because the 'power to

define criminal offenses and to prescribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress.' *Ibid.* As we previously noted in *Brown v. Ohio, supra,* 'where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishment for the same offense.' 432 U.S., at 165, 97 S.Ct., at 2225. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution.[3] "

---

"[3] Petitioners' contention that a single conspiracy which violates both § 846 and § 963 constitute the 'same offense' for double jeopardy purposes is wrong. We noted in *Brown v. Ohio, supra,* that the established test for determining whether two offenses are the 'same offense' is the rule set forth in *Blockburger* —the same rule on which we relied in determining congressional intent. As has been previously discussed, conspiracy to import marihuana in violation of § 963 and conspiracy to distribute marihuana in violation of § 846 clearly meet the *Blockburger* standard. It is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. See, *e. g., Harris v. United States,* 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); *Gore v. United States,* [357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405] *supra.* This is true even though the 'single transaction' is an agreement or conspiracy. *American Tobacco Co. v. United States,* [328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575] *supra.*"

101 S.Ct. at 1144–45.

The enlightenment of the Court's opinion in *Albernaz* is significantly dimmed, however, and the "veritable Sargasso Sea"[2] of the decisional law in the area remains significantly entangling to the "judicial navigator", by reason of two factors:

(1) The definitive ultimate and penultimate sentences of *Albernaz* are *dicta,* unnecessary to reach the Court's conclusion in that case; and

(2) Mr. Justice Stewart, the author of *Whalen,* in a concurring opinion joined by Justices Marshall and Stevens, felt impelled to disavow that *dicta,* stating:

"In *Whalen v. United States,* the Court said that 'the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized.' 445 U.S., at 688, 100 S.Ct., at 1436.

"But that is a far cry from what the Court says today: '. . . [T]he question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution.' *Ante,* at 1145. *These statements are supported by neither precedent nor reasoning and are unnecessary to reach the Court's conclusion.*

"*No matter how clearly it spoke, Congress could not constitutionally provide for cumulative punishments unless each statutory offense required proof of a fact that the other did not, under the criterion of Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.*

"Since Congress has created two offenses here, and since each requires proof of a fact that the other does not, I concur in the judgment." (Emphasis supplied).

---

2. The Sargasso Sea is a large oval-shaped area of the North Atlantic Ocean set apart by the presence of marine plants, or seaweed, which float on its surface—a region of slow ocean currents surrounded by a boundary of rapidly moving currents such as the Gulf Stream and the North Equatorial Current. "The early navigators who sailed their small ships to North America saw the Sargasso Sea as patches of gulfweed that seemed to form wide-spreading meadows. Soon there were legends and myths about the region which told of large islands of thickly matted seaweed inhabited by huge monsters of the deep. * * * They pictured a blanket of netted seaweed from which no ship could escape, once it became entangled in the weed. * * *" *World Book* Encyclopedia, Vol. 17, p. 111 (1976).

101 S.Ct. at 1145–46 (Stewart, J., concurring).

The cloud thus remaining over the law of double jeopardy notwithstanding, we must consider ourselves bound by the majority rule now apparently emerging out of the "Sargasso Sea" and manifesting itself in the last paragraphs of *Albernaz*. Although *dicta*, the emergence of the evolving rule stands unmistakably clear by virtue of the vote of 6 to 3, cast in the face of the flat contradiction of the concurring Justices, including the author of *Whalen*.

Applying the rule of *Albernaz* to the instant case, we now hold that where the General Assembly intended, as we have found that it did in § 613(1) and § 1447,[3] to impose multiple punishments for two offenses not satisfying the *Blockburger* test, imposition of two consecutive sentences by a court as a result of a single criminal trial does not violate the Double Jeopardy Clause of the Fifth Amendment.

The *Hunter* majority in this Court reluctantly follows the evolving rule of the majority of the United States Supreme Court in *Albernaz*. The Rule of Supremacy prevails on this issue, however, and trusting, as we must, that the *dicta* in *Albernaz* will soon become the clear and unquestioned rule of law to be followed, we now hold as follows in the instant case: Our conclusion "that § 1447 creates an offense distinct from the underlying § 613(1) felony of Assault First Degree, and that it was the legislative intent to subject this defendant to multiple penalties for the single criminal act in which she engaged," 420 A.2d at 124, is determinative upon the issue of double jeopardy. It follows therefrom that the imposition of multiple sentences upon the defendant for the two offenses in this case does not violate the Double Jeopardy Clause of the Fifth Amendment.

3. § 1447(c), especially, makes such intent unmistakable:

"§ 1447. Possession of a deadly weapon during commission of a felony; class B felony.
" * * *
"(c) Any sentence imposed upon conviction for possession of a deadly weapon during the commission of a felony shall not run concur-

Any statement contrary to the above, contained in the previous *Hunter* opinions of this Court, is hereby abandoned.

\* \* \* \* \* \*

The judgment below now stands AFFIRMED.

rently with any other sentence. In any instance where a person is convicted of a felony, together with a conviction for the possession of a deadly weapon during the commission of such felony, such person shall serve the sentence for the felony itself before beginning the sentence imposed for possession of a deadly weapon during such felony. \* \* \* "