Orville CARTER, Jr.,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–880A250.

Court of Appeals of Indiana,
Third District.

Aug. 20, 1981.

Russell D. Millbranth, Winamac, for de-
fendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Carter was tried by jury and convicted of reckless homicide and causing death by operating a motor vehicle while intoxicated.

■ He first asserts error in admitting into evidence inculpatory conversations had with the police at the hospital after the accident and then two or three days later at the police station. The evidence was properly admitted. On neither occasion was Carter in custody and both times he was given *Miranda* warnings. The other circumstances were such that the court could properly conclude that the statements were knowingly, voluntarily and understandingly given.

■ Officer Basiger was properly qualified as an expert witness. He was therefore properly permitted to state his opinion of excessive speed. In addition, the diagram he prepared was properly admitted in evidence since it simply displayed visually the matters the officer was entitled to testify to.

■ Moreover, the evidence was sufficient under both counts. There was ample evidence, including the opinion of Dr. Peterson, that Carter was intoxicated. That coupled with the apparent speed and manner in which the vehicle swerved off both sides of the road prior to striking the tree would support the inference of recklessness.

There is, however, one additional point. As noted at the outset the jury convicted on both counts. The court ultimately sentenced Carter to serve two (2) years for each conviction with the sentences to be served consecutively. This was fundamental error.

■ We are aware, of course, that Indiana has rejected the "one set of operative circumstances" approach to the double jeopardy consideration in convictions for multiple offenses. *See, e. g., Morris v. State* (1980), Ind., 398 N.E.2d 1284. Instead

we follow the analysis prescribed in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 which focuses upon whether each offense requires proof of an element that the other does not. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893.

■ The details of that analysis are, however, entirely beside the point for the case at hand. There was here but one homicide, and that was the gravamen of the offense. It matters no more that Carter was both intoxicated and driving recklessly in causing his passenger's death than it would have had Carter poisoned him, stabbed him and thrown him from a high bridge. The means of committing an offense may not be utilized to multiply the number of offenses committed. Only one homicide was committed and only one sentence may be imposed. *Bond v. State* (1980), Ind., 403 N.E.2d 812; *Bean v. State* (1978), 267 Ind. 528, 371 N.E.2d 713.

The case is therefore remanded to the trial court with instructions to vacate one of the sentences. In all other respects the conviction is affirmed.

HOFFMAN, P. J., concurs.

STATON, J., concurs and files separate opinion.

STATON, Judge, concurring.

I concur in the majority's conclusion that cumulative punishment for Carter's two convictions offends the Double Jeopardy Clause of the United States Constitution. The imposition of consecutive sentences in this case for reckless homicide, IC 1976, 35–42–1–5 (Burns Code Ed., 1979 Repl.) (amended 1980), and for causing death while driving and being intoxicated, IC 1976, 9–4–1–54(b)(1) (Burns Code Ed., 1980 Repl.) (amended 1980 and 1981), clearly subjects Carter to multiple punishment for the "same offense." However, the reasoning employed by the majority does little to sustain its conclusion. The same act or transaction, including a single homicide, may entail the violation of more than one statute. Where the statutes do not have a greater

offense-lesser offense relationship or where they do not define the "same offense," multiple convictions and punishments thereunder are entirely permissible. As one learned scholar has analyzed the issue,

> "[w]here two offenses involving the operation of a motor vehicle are separate and distinct and neither is necessarily included in the other, a prosecution for one offense is not a bar to a subsequent prosecution for the other, even though both offenses were committed at the same time and by the same conduct. . . ." (footnote omitted)

1 Torcia, *Wharton's Criminal Law* § 69, at 347 (14th ed. 1978). The same principle applies to prosecution under two or more statutes in a single criminal proceeding.

The statutes in question in the present case, as the majority properly concludes, do not pass the litmus test for double jeopardy. Unfortunately, the majority has not stated adequate reasons for its conclusion. I therefore concur only in the result of the majority's opinion for it further confuses the law of double jeopardy, which Justice Rehnquist has astutely characterized as "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States* (1981), —— U.S. ——, ——, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275, 284.[1]

When enacting the statutes under which Carter was convicted, the legislature created what the Indiana Supreme Court has already classified as "two distinct crimes." *DeVaney v. State* (1972), 259 Ind. 483, 493–94, 288 N.E.2d 732, 738–39. The same unlawful act or transaction may result in multiple convictions and punishments if the statutes under which the convictions were obtained are separate and distinct and do not constitute the "same offense." *Elmore v. State* (1978), 269 Ind. 532, 539, 382 N.E.2d 893, 897. When a double jeopardy inquiry arises, the following test must be applied. This test was first enunciated by the Supreme Judicial Court of Massachusetts in *Morey v. Commonwealth* (1871), 108 Mass. 433, 434, and later incorporated *in toto* by the United States Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309.

> " 'The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.' "

*Elmore, supra,* 269 Ind. at 534, 382 N.E.2d at 895. In analyzing the *Blockburger* test, the Indiana Supreme Court observed:

> "The focus of a proper double jeopardy analysis must be on whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances. The inquiry into whether the offenses stem from the same act is merely the first step in the analysis. If the offenses are premised upon different acts, the problem is not so great. But where they do arise from the same act, we must proceed to determine whether the offenses charged are themselves the same, for the Double Jeopardy Clause was written in terms of the 'same offence,' not the same act. In other words,

---

1. A geography lesson recently taught by the Supreme Court of Delaware provides useful insight into Justice Rehnquist's consternation for judicial navigators who make the fateful voyage into double jeopardy waters:

    "The Sargasso Sea is a large oval-shaped area of the North Atlantic Ocean set apart by the presence of marine plants, or seaweed, which float on its surface—a region of slow ocean currents surrounded by a boundary of rapidly moving currents such as the Gulf Stream and the North Equatorial Current. 'The early navigators who sailed their small ships to North America saw the Sargasso Sea as patches of gulfweed that seemed to form wide-spreading meadows. Soon there were legends and myths about the region which told of large islands of thickly matted seaweed inhabited by huge monsters of the deep. * * * They pictured a blanket of netted seaweed from which no ship could escape, once it became entangled in the weed. * * *' *World Book Encyclopedia,* Vol. 17, p. 111 (1976)."

    *Hunter v. State* (1981), —— Del. ——, 430 A.2d 476, 480, n. 2.

the fact that the offenses stem from the same act merely informs us that there is a potential problem; it is not a solution to the problem. The ultimate focus is on the identity of the offenses, not on the identity of their source."

*Elmore, supra,* 269 Ind. at 539, 382 N.E.2d at 897. The Court in *Elmore* thus advocated a side-by-side analysis of the statutes in question. If one of the statutes, when analyzed in the abstract, "requires proof of a fact which the other does not," then the imposition of punishment under both statutes is not constitutionally repugnant.

The strict application of the *Blockburger* test to the statutes involved in the present case appears to result in a conclusion contrary to that reached by the majority. The majority itself recognizes that the *Blockburger-Elmore* "analysis, however, [is] entirely beside the point." My question is why should the *Blockburger* test be discarded for the present case? Claiming that only one homicide occurred and that only one conviction may stand appears to be a resurrection of the "one set of operative circumstances" doctrine. I assume the majority did not intend such a result. Thus, I believe the two statutes in question must be subjected to the analysis prescribed by the Indiana Supreme Court in *Elmore*, which fully incorporated the *Blockburger* test.

The proper application of the *Blockburger* test requires a comparison of the elements of the two statutes in question. Reckless homicide, as defined at IC 35–42–1–5 before its recent amendment, required (1) the killing, (2) of another person, (3) while operating a vehicle, (4) in a reckless manner. Causing death while driving and being intoxicated, as defined at IC 9–4–1–54(b)(1) before its recent amendment, required (1) the killing, (2) of another person, (3) while operating a vehicle, (4) while intoxicated. The statutes differ only in their last elements—recklessness and intoxication. Recklessness and intoxication are two very distinct concepts in Indiana law, and they may exist independently. A person may engage in reckless conduct without being intoxicated, and *vice versa.* For example, a maniacal yet perfectly sober driver may speed through a crowded playground and cause the inevitable result. Such conduct would be violative of the reckless homicide statute but not the causing death while driving and being intoxicated statute. On the other hand, the village drunk may operate a vehicle with miraculous adherence to the rules of the road until being involved in an accident that results in the death of another person. The village drunk could be prosecuted for violating IC 9–4–1–54(b)(1). However, without proof of more than intoxication, the village drunk would not be subject to a reckless homicide conviction. *See, DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732; *Johnson v. State* (1975), 164 Ind.App. 12, 326 N.E.2d 637; *cf., Williams v. State* (1981), Ind., 423 N.E.2d 598 (# 781–S–192, handed down July 22, 1981) (same principle applied to offense of criminal recklessness, IC 1976, 35–42–2–2(b) (Burns Code Ed., 1979 Repl.) (amended 1981)).

The examples above demonstrate that a strict application of the *Blockburger* test to the statutes involved in the present case results in a finding that each statute "requires proof of a fact which the other does not." The differing elements—recklessness and intoxication—are not always one and the same. However, the strict application of the *Blockburger* test results in a conclusion that is far from satisfactory, and recent United States Supreme Court cases convince me that the Court has recognized the infirmities of a strict application of the *Blockburger* test to the overlapping network of criminal statutes that prevails today. The abstract analysis of the statutes in question required under the *Blockburger* test appears to have been modified by the Court in *Albernaz v. United States* (1981), —— U.S. ——, 101 S.Ct. 1137, 67 L.Ed.2d 275; *Illinois v. Vitale* (1980), 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228, and *Whalen v. United States* (1980), 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715. The Court appears to be evolving from an abstract analysis of the statutes in question to a *de facto* examination of the components of the stat-

utory elements.[2] Sometimes, the statutes may appear distinct on their faces, but, when analyzed in conjunction with a particular legal theory, the statutes proscribe the "same offense." *Vitale, supra,* 447 U.S. at 420–21, 100 S.Ct. at 2267, 65 L.Ed.2d at 238. The theoretical nature of the Court's conclusion is perhaps better understood when applied to the statutes in the present case.

When analyzed in the abstract, IC 35–42–1–5 and IC 9–4–1–54(b)(1) appear to contain different elements. However, the legal concept of recklessness as used in IC 35–42–1–5 is merely an all-encompassing term for various modes of conduct, one of which includes intoxication. As noted previously in this opinion, proof of reckless conduct *may* consist of a showing of intoxication *plus* some other mode of conduct that evinces a "plain, conscious, and unjustifiable disregard of harm that might result." *See,* IC 1976, 35–41–2–2(c) (Burns Code Ed., 1979 Repl.). On the other hand, some cases may not require a showing of the actor's intoxication to establish reckless conduct. The element of recklessness may be established by proof of other modes of conduct, such as those enumerated in IC 1976, 9–4–1–56.1 (Burns Code Ed., 1980 Supp.). However, when the State charges a person with reckless homicide *and* causing death while driving and being intoxicated and when the State intends to rely or has relied upon evidence of the defendant's intoxication to establish the element of recklessness, the elements of causing death while driving and being intoxicated are contained completely within the elements of reckless homicide. The elements of the former are (1) the killing, (2) of another person, (3) while operating a vehicle, (4) while intoxicated. Reckless homicide, under this analysis, is composed of the following elements: (1) the killing, (2) of another person, (3) while operating a vehicle, (4) while intoxicated, (5) plus some other component of recklessness, such as speeding or swerving from side to side. When the legal theory the State asserts in support of the reckless homicide charge necessitates the proof of the defendant's intoxication, the offense of causing death while driving and being intoxicated becomes a lesser included offense of the greater offense, reckless homicide. As such, punishment for both is prohibited under the Double Jeopardy Clause.

It must be emphasized that under the modified *Blockburger* test, the reviewing court need not delve into the particular

---

**2.** The Supreme Court is now treating the *Blockburger* test as a "rule of statutory construction." *Whalen, supra,* 445 U.S. at 691, 100 S.Ct. at 1438, 63 L.Ed.2d at 723. The first step in the *Blockburger* analysis is to look to the legislative intent behind the statutes in question. The Court stated:

"The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent...."

*Whalen, supra,* 445 U.S. at 691–92, 100 S.Ct. at 1438, 63 L.Ed.2d at 723–24. The Court's most recent statement on the issue appears in *Albernaz, supra,* 450 U.S. at 344, 101 S.Ct. at 1145, 67 L.Ed.2d at 285:

"As we previously noted in *Brown v. Ohio,* [(1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187] ..., 'where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by impos-

ing multiple punishment for the same offense.' 432 U.S., at 165, 97 S.Ct., at 2225. Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution." (footnote omitted)

The Court appears to be stating that if the legislature authorized cumulative punishments for separately defined offenses, then the Double Jeopardy Clause is not offended. An analysis of the Court's shift in focus to the legislative intent behind the statutes appears in *Hunter v. State* (1981), ── Del. ──, 430 A.2d 476.

I am unable to discern an intent on the part of the legislature to require cumulative punishments for convictions under both IC 9–4–1–54(b)(1) and 35–42–1–5 when the convictions arise out of the same act. Thus, the first step of the *Blockburger* test offers no relief for the issue being addressed in the present case. The second step, which is developed in the text, must thus be examined.

facts of the case when making a double jeopardy inquiry. The court must focus its attention upon the legal theory that was employed by the State in proving the reckless homicide charge. The issue becomes, "did the State rely upon intoxication to prove a component of recklessness?" If so, then conviction under one statute does not require "proof of a fact which the other does not." Supportive of this position are the Supreme Court's observations in *Vitale, supra,* in which the defendant successfully asserted in the state court a double jeopardy challenge to the prosecution for involuntary manslaughter with a vehicle after having been convicted of failing to reduce speed to avoid an accident. The defendant contended and the Illinois Supreme Court agreed that the latter conviction, as a lesser included offense of involuntary manslaughter, barred the subsequent prosecution for the greater offense. The United States Supreme Court held:

> "If, as a matter of Illinois law, a careless failure to slow is always a necessary element of manslaughter by automobile, then the two offenses are the 'same' under *Blockburger* and Vitale's trial on the latter charge would constitute double jeopardy under *Brown v. Ohio* [(1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187]. In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has

already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

\* \* \* \* \* \*

> "[I]f in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution." (footnote omitted)

*Vitale, supra,* 447 U.S. at 419–20, 421, 100 S.Ct. at 2267, 65 L.Ed.2d at 237–38.[3] Relying on the preceding passages from *Vitale,* the Illinois Supreme Court viewed *Vitale* as a modification of the *Blockburger* test and applied the modified version to facts similar to those of the present case. In *People v. Zegart* (1980), 83 Ill.2d 440, 47 Ill.Dec. 336, 415 N.E.2d 341, *cert. denied* (1981), —— U.S. ——, 101 S.Ct. 3094, 69 L.Ed.2d 961, the defendant successfully asserted a motion to dismiss a reckless homicide charge after having been convicted of crossing over a highway dividing median. In affirming the dismissal of the charge, the Illinois Supreme Court held:

> "In its pleading the State concedes, prior to trial, that it intends to sustain the manslaughter charge by introducing evi-

---

**3.** In language appearing early in its *Vitale* opinion, the Supreme Court made the following unequivocal statements that appear to contradict the passage from *Vitale* just quoted in the text of this opinion:

"[I]f manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution."

*Vitale, supra,* 447 U.S. at 419, 100 S.Ct. at 2267, 65 L.Ed.2d at 237. The Court did not apparently intend these statements to preclude the review of statutory elements to determine if com-

ponents of the elements entailed proof of the same facts used to prove another offense. This interpretation of *Vitale* is supported by the fact that Chief Justice Burger, in his opinion dissenting to the denial of a petition for a writ of certiorari in *Illinois v. Zegart* (1981), 49 U.S. L.W. 3929 [case reported at *People v. Zegart* (1980), 83 Ill.2d 440, 47 Ill.Dec. 336, 415 N.E.2d 341], relied upon the passage quoted in this footnote to support his contention that courts may look only to the statutory elements in question and not the components of those elements. His opinion clearly represents the minority view of the Supreme Court, and of the Illinois Supreme Court. *See, People v. Zegart, supra,* 47 Ill.Dec. at 339–40, 415 N.E.2d at 344–45 (Underwood, J., dissenting).

dence that defendant drove across the median. While it is true that reckless homicide does not 'always' entail proof of driving across a median strip, under the particular facts in this case, as disclosed by the amended bill of particulars, the State does expect to rely on such conduct 'in so far as it is necessary to prove the allegations of the indictment.' In sum, the State intends to use the factual basis which led to the first conviction as the basis for the second conviction. We conclude that by doing so the State would be violating the double jeopardy clause of the fifth amendment to the United States Constitution (see the majority and dissenting opinions in *Illinois v. Vitale*)...."

*Zegart, supra*, 415 N.E.2d at 343–44. In an Illinois case which in turn followed *Zegart*, the court provided the following summary of the modified *Blockburger* test:

"The United States Supreme Court made its most recent attempt to clarify this test in *Illinois v. Vitale* (1980), 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228. *Vitale* indicates that offenses are not the same for double jeopardy purposes unless one of the offenses 'is always a necessary element' of the other offense or unless, in the facts of the particular case, it is necessary to rely on and prove the lesser offense to establish an element of the greater offense as in cases involving felony murder and the underlying predicate felony. 447 U.S. 410, 416, 420, 100 S.Ct. 2260, 2265, 2267, 65 L.Ed.2d 228, 235, 237–38."

*People v. Reed* (1981), 92 Ill.App.3d 1115, 48 Ill.Dec. 421, 416 N.E.2d 694, 698; *see also, People v. C. H.* (1981), 93 Ill.App.3d 825, 417 N.E.2d 1053, 1055. The *Reed* case provides a good example of when multiple convictions and punishments are permissible under the modified *Blockburger* test. The court observed:

"The *Vitale* assertion that a defendant would have a 'substantial claim of double jeopardy' if the State found it 'necessary to prove' the less serious offense to sustain the more serious offense, seems to require, as a bottom line, that proof of the lesser offense be 'necessary' to sustain the more serious offense. Stated conversely, this would mean that if a conviction of the more serious offense could stand in a case without proof of the lesser offense, the double jeopardy claim would be vitiated. Thus, in *Zegart*, where a conviction for reckless homicide could not have been sustained without evidence of crossing the median, the prior conviction for crossing the median barred the subsequent prosecution for reckless homicide. In the present case, however, we believe the conviction for driving under the influence is sustained by the breathalyzer results and admissions of defendant, rendering evidence of running the red light superfluous. Therefore, the present defendant does not have even a 'substantial' double jeopardy claim."

*Reed, supra*, 416 N.E.2d at 700. The test to be applied now was perhaps best stated in *Pandelli v. United States* (6th Cir. 1980), 635 F.2d 533. The court, after reviewing *Vitale* and *Whalen*, reached the following conclusions:

"The Court states in each opinion, however, that the *Blockburger* test in its modified form still 'focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial,' *Vitale*, 100 S.Ct. at 2265, or 'the *facts* alleged in a particular indictment.' *Whalen*, 100 S.Ct. at 1439 (emphasis added). Courts have always looked to the *law* the indictment claims the defendant violated. If they did not do so, they would not know even what statutes are at issue under the *Blockburger* rule. What the reviewing court must do now in applying *Blockburger* is to go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail." (emphasis original)

*Pandelli, supra*, 635 F.2d at 538.

The legal theory asserted by the State in the present case in support of the reckless homicide charge necessarily entailed proof

of the elements of the offense of causing death while driving and being intoxicated. Under the modified *Blockburger* test, the two offenses must be regarded as the "same offense" for double jeopardy purposes because proof of the elements of one offense necessarily and fully proved the elements of the other offense. The Double Jeopardy Clause of the United States Constitution (and presumably Art. 1, § 14 of the Indiana Constitution) "protects against multiple punishments for the same offense." *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665. Therefore, Carter may be punished only for one of the offenses.[4]

It must be emphasized that the prosecution for both reckless homicide and causing death while driving and being intoxicated in the same criminal proceeding is not barred. The State may, as it did in the present case, charge the defendant with both offenses. However, if the defendant is convicted of both offenses and the State relied upon intoxication as an element of recklessness, sentencing for both is constitutionally impermissible.

The application of the Double Jeopardy Clause, a principle of law that has had its roots traced back to the days of Demosthenes, *see Whalen, supra,* 445 U.S. at 699, 100 S.Ct. at 1442, 63 L.Ed.2d at 728 (Rehnquist, J., dissenting), has become an increasingly arduous task as criminal statutes become more complex and overlapping. The erudite comments of Justice Stewart, as quoted in *Pandelli, supra,* 635 F.2d at 538, n. 7, are persuasive:

In *Ashe v. Swenson,* 397 U.S. 436, 445 n. 10, 90 S.Ct. 1189, 1195 n. 10, 25 L.Ed.2d 469 (1970), Mr. Justice Stewart, the author of the opinion in *Whalen,* noted:

'[A]t common law, and under federal criminal statutes, offense categories were relatively few and distinct. A single course of criminal conduct was likely to yield but a single offense. In more recent times with the advent of specificity in draftsmanship and the extraordinary proliferation of overlapping and related statutory offenses, it became possible for prosecutors to spin out a startingly numerous series of offenses from a single alleged criminal transaction. As the number of statutory offenses multiplied, the potential for unfairness and abusive prosecution became far more pronounced. (Citations omitted)."

Under Indiana law, it is evident that the offenses of the Motor Vehicle Code, Title 9, may in some places overlap with the offenses of the Criminal Code, Title 35. The present case involves such an overlap. Perhaps, the legislature may reexamine the two codes and formulate an integrated system of laws controlling motor vehicle offenses.[5] To do so would alleviate the dan-

---

4. Chief Justice Givan, in his dissenting opinion in *Williams v. State* (1981), Ind., 423 N.E. 2d 598 (No. 781 S 192, handed down July 22, 1981), reached a conclusion similar to that reached in this opinion. In interpreting the case of *DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732, Chief Justice Givan observed:

"It should be noted that in *DeVaney* the appellant had been convicted of both reckless homicide and causing the death of another while intoxicated. This Court only reversed the reckless homicide conviction and allowed the conviction for causing the death of another while driving under the influence of liquor to stand.

"It is obvious in the *DeVaney* case that both convictions could not be allowed to stand, as we had a dual conviction for a single offense. . . ."

The majority in *Williams* had cited *DeVaney* in support of another legal proposition.

5. The legislature has made great strides in clarifying what was once a very confusing body of law. During its 1981 regular session, the legislature amended IC 9–4–1–54. *See,* 6 West's Ind.Leg.Serv. (1981), 2315–17. In 1980, the legislature increased the penalty for causing death while driving and being intoxicated from a Class D felony to a Class C felony. The penalty remains the same under the 1981 amendment.

In 1980, the legislature deleted the second sentence of the reckless homicide statute, IC 35–42–1–5, which made the reckless killing of another person with a vehicle a Class D felony. Now, all reckless homicides are treated the same, with the penalty fixed as a Class C felony.

While these amendments in IC 9–4–1–54 and IC 35–42–1–5 have clarified the law in this area, they have not resolved the double jeopardy problem that may arise when convictions are obtained under both statutes for the same act or transaction.

ger of multiple punishments for the "same offense." Until then, Indiana courts must be cognizant of the recent trends in double jeopardy law so that criminal defendants do not sink with unwary judicial navigators in the "Sargasso Sea" of double jeopardy law.