Troy D. DAWSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 23A01–9204–CR–103.

Court of Appeals of Indiana,
First District.

April 20, 1993.

Kenneth R. Watson, Williamsport, for appellant-defendant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Troy D. Dawson appeals his convictions and sentences for operating a vehicle while intoxicated resulting in the death of another ("OWI death"), and reckless homicide, both Class C felonies,[1] and his convictions for resisting law enforcement[2] and reckless driving.[3] We restate the issues as:

I. Did the trial court erroneously admit the results of Dawson's second blood test?

II. Must Dawson be relieved of responsibility for the decedent's death on account of the decedent's own intoxication?

III. Is Dawson entitled to reversal based on the State's alleged failure to comply with discovery orders?

IV. Can Dawson be punished for both OWI death and reckless homicide?

### FACTS

The evidence favorable to the trial court's judgment reveals that on May 26, 1991, Attica Police Officer Gene Snoeberger observed Dawson riding his motorcycle at an excessively high rate of speed. Officer Snoeberger activated his lights and tried to stop Dawson, but Dawson successfully outmaneuvered Officer Snoeberger and escaped. Dawson was later charged

---

1. IND.CODE 9–30–5–5; IND.CODE 35–42–1–5.

2. IND.CODE 35–44–3–3(a)(3).

3. IND.CODE 9–21–8–52.

with reckless driving and resisting law enforcement.[4]

About four weeks later, on the evening of June 22, 1991, after completing a long day of roofing his father's house, Dawson and several of his friends had a cookout, drank beer, and went swimming. A little before 2:00 a.m. the next morning, Dawson, on his motorcycle, and his friends, in their cars, left the Dawson home and went to a party hosted by Holly Foster. They arrived a couple of minutes later.[5] The party had just ended, however, so Dawson returned to his motorcycle. He announced his intention to do a wheelie, which his friend Scott Weiser advised against because Dawson had been drinking. Despite the Weiser warning, Dawson mounted the motorcycle, rode down the street, and made a U-turn. He revved his engine, accelerated to between forty and sixty miles per hour, and did the wheelie.

While Dawson was zipping back up the street on one wheel, his friend Marc Billingsley happened to walk or run across it. It appeared as if Billingsley may have been removing his shirt while doing so. Dawson's motorcycle struck Billingsley and killed him. Dawson sustained serious injuries. The accident occurred several minutes after 2:00 a.m.[6]

Officer Snoeberger was summoned at 2:17 a.m. and arrived one minute later. He smelled a strong odor of alcohol about Dawson. A blood sample taken from Dawson at 3:10 a.m. disclosed a blood alcohol content of 0.11% by weight and further revealed the presence of twenty nanograms of xanax, a benzodiazepine-class drug similar to valium. A second blood sample, drawn at 5:25 a.m., revealed a blood alcohol content of 0.095%.

The charges arising from these two incidents were consolidated in a single bench trial. The trial court found Dawson guilty of all four charges. He received a one-year sentence for resisting law enforcement and a 180-day sentence for reckless driving, the two to run concurrently. He was sentenced to four years' imprisonment on both the OWI death and reckless homicide charges, to be served concurrently with each other and consecutive to the concurrent resisting law enforcement and reckless driving sentences. In all, Dawson received a five-year sentence. He now appeals.

## DISCUSSION AND DECISION

Dawson devotes the vast majority of his energy to appealing the convictions and sentences relating to the events of June 22, 1991. With the exception of section III(B), the analysis that follows pertains solely to the OWI death and reckless homicide convictions and sentences.

### I. The Second Blood Sample

Dawson first contends the trial court improperly admitted State's Exhibit 40, the results of the blood sample drawn at 5:25 a.m., because the test was administered more than three hours after the development of probable cause, allegedly in contravention of IND.CODE 9–30–6–2(c).[7]

We first observe Dawson raised no objection to the introduction or admission of Exhibit 40. By failing to make a timely objection, Dawson has waived the opportunity to allege error on appeal. *See Walker v. State* (1991), Ind.App., 582 N.E.2d 877. We also observe Dawson failed to place the challenged exhibit in the

---

4. We extend our gratitude to the deputy attorney general for setting forth the facts relating to the May 26th incident. Dawson neglected to do so. We remind Dawson of Ind.Appellate Rule 8.3(A)(5), which requires the appellant's brief to include "[a] statement of the facts relevant to the issues presented for review."

5. According to Dawson's brief, "Tony Dawson ... had left the Dawson residence a few minutes before 2:00 o'clock and arrived at the Foster residence about 1:00 or 1:30 A.M." *Brief of Appellant* at 9. We are skeptical.

6. We are also hesitant to accept Dawson's contention that "the accident [was] established to have occurred prior to Seventeen o'clock A.M....." *Brief of Appellant* at 14.

7. IND.CODE 9–30–6–2(c) states "[a] test administered under this chapter must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9–30–5 [which forbids operating while intoxicated]."

record of proceedings and failed to provide citation to the relevant portions of the record relating to the challenged evidence. The duty of presenting a record adequate for intelligent appellate review falls upon the appellant, as does the obligation to support the argument presented with citation to the record. *Moore v. State* (1981), Ind.App., 426 N.E.2d 86; *Williams v. State* (1980), Ind.App., 408 N.E.2d 123; Ind.Appellate Rule 8.3(A)(7). Literally, we can find no error.

■ Even if we were to assume the trial court erroneously admitted the results of the second blood test, we are satisfied there is "no substantial likelihood that the evidence contributed to the verdict," as we must be in order to find the erroneous admission of blood alcohol content evidence harmless. *Bowman v. State* (1991), Ind., 577 N.E.2d 569, 571. Dawson did not and does not challenge the results of the earlier test revealing a 0.11 blood alcohol content, and the evidence of Dawson's intoxication was sweeping. Even Dawson admitted he was affected by the alcohol. Dawson is not entitled to reversal based on this allegation of error.

## II. Causation

■ Dawson next boldly asserts his conviction must be reversed because Billingsley's own intoxication was the "approximate cause" of his death. *Brief of Appellant* at 17. He argues that because Billingsley's blood alcohol content was 0.23 and that Billingsley was seen running heedlessly across the street while removing his shirt over his head, Billingsley caused his own death.

Causation is a question of fact. *Rippy v. State* (1986), Ind.App., 493 N.E.2d 477, *trans. denied.* The trial court, as trier of fact, rejected Dawson's proposition, as it was entitled to do, and instead found that Dawson's act of driving up the street at between forty and sixty miles per hour while intoxicated and doing a wheelie was the proximate cause of death, also as it was entitled to do. Dawson's argument amounts to a demand that we reweigh the

fact-finder's factual findings and reach a contrary result. We refuse. *See Id.*

## III. Discovery

### A

■ After admitting that even he did not fully comply with the trial court's discovery orders, Dawson contends the State prejudiced his case by failing to provide potentially exculpatory evidence during discovery. He has not specified the evidence to which he refers, however, either to the trial court or to us. If his reference is to Billingsley's autopsy report, Dawson has failed to establish its exculpatory nature by failing to place the report in the record of proceedings. And even if there was some sort of discovery violation, the proper remedy was to request a continuance, which Dawson did not do. *Hedrick v. State* (1982), Ind., 430 N.E.2d 1150. Again, we can literally find no error.

### B

■ As his sole challenge to the resisting law enforcement and reckless driving convictions, Dawson makes an indecipherable argument concerning an alibi defense. We will not consider incogent argument. *See Cammack v. State* (1970), 254 Ind. 637, 261 N.E.2d 862. These convictions and sentences are affirmed.

## IV. Double Jeopardy

■ Finally, Dawson contends double jeopardy principles forbid the State from punishing him for both his OWI death and reckless homicide convictions.

### A

The Fifth Amendment to the United States Constitution provides, in part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The several States are bound by the double jeopardy clause through the Fourteenth Amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. Similarly, Article I, § 14 of the Indiana constitution provides, in part, "[n]o person shall be put in jeopardy twice for the same offense." Double jeopardy prohibits reprosecution for the same of-

fense after an acquittal, reprosecution for the same offense after a conviction, and multiple punishment for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. It is this final prohibition—barring multiple punishments for the same offense—that is at issue here. If OWI death and reckless homicide are the "same offense," then double jeopardy prohibits the State from punishing Dawson for both. If they are not the same offense, double jeopardy is not a concern.

"The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States* (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. "The fact that the offenses stem from the same act merely informs us that there is a potential problem; it is not a solution to the problem. The ultimate focus is on the identity of the offenses, not on the identity of their source." *Elmore, supra,* at 539, 382 N.E.2d at 897.

In *Carter v. State* (1981), Ind.App., 424 N.E.2d 1047, 1048 while acknowledging "Indiana has rejected the 'one set of operative circumstances' approach to the double jeopardy consideration in convictions for multiple offenses[,]" this court held OWI death and reckless homicide were the "same" for double jeopardy purposes. Writing for the majority, Judge Garrard explained,

[t]he details of [the traditional *Blockburger* analysis] are, however, entirely beside the point for the case at hand. There was here but one homicide, and that was the gravamen of the offense. It matters no more that Carter was both intoxicated and driving recklessly in causing his passenger's death than it would have had Carter poisoned him, stabbed him and thrown him from a high bridge. The means of committing an offense may not be utilized to multiply the number of offenses committed. Only one homicide was committed and only one sentence may be imposed.

*Id.* The court remanded with instructions to vacate one of the sentences.

Citing *Elmore, supra,* Judge Staton's concurrence emphasized his disagreement that the details of the *Blockburger* analysis were beside the point when there was but one accident and one death. After all, Judge Staton observed, a person may engage in reckless conduct without being intoxicated and may be intoxicated without engaging in reckless conduct. He illustrated his point by comparing the case of the "maniacal yet perfectly sober driver [who] may speed through a crowded playground and cause[s] the inevitable result" with the "village drunk [who] may operate a vehicle with miraculous adherence to the rules of the road until being involved in an accident that results in the death of another person." *Carter, supra,* at 1050 (Staton, J., concurring). The maniacal driver's conduct would violate the reckless homicide statute but not the OWI death statute, and the village drunk's conduct would violate the OWI death statute but not the reckless homicide statute.

Judge Staton concluded that "[w]hen analyzed in the abstract, [reckless homicide and OWI death] appear to contain different elements." *Id.* at 1051. He noted the analysis was not complete, however, because it is possible the State would attempt to prove recklessness by showing intoxication; were this the case, the elements of OWI death would be completely contained within the elements of reckless homicide. Because under *Blockburger* a lesser-included offense is the same as the greater offense for double jeopardy purposes, double jeopardy would prohibit punishment for both OWI death and reckless homicide when the defendant's reckless act was premised upon intoxication. In fact, this is exactly what happened in *Carter:* "[t]he legal theory asserted by the State in the present case in support of the reckless homicide charge necessarily entailed proof of the elements of the offense of causing death while driving and being intoxicated." *Id.*

at 1053–54. Accordingly, the two offenses were the same and Carter could not be punished for both.

The only other Indiana case addressing this precise issue was decided the next year. In *Drossos v. State* (1982), Ind.App., 442 N.E.2d 1, the defendant was convicted and sentenced on each of three counts of OWI death and reckless homicide, all arising from the same car accident. Relying on *Carter*, the *Drossos* court vacated the three convictions for reckless homicide. Footnote four of the opinion suggests that just as in *Carter*, the State's theory of recklessness included proof of intoxication.

We are not convinced Dawson's OWI death and reckless homicide offenses are the same for double jeopardy purposes. Unlike in *Carter* and *Drossos*, the State's legal theory supporting its allegation of reckless homicide against Dawson did not entail proof of intoxication.[8] To the contrary, to establish Dawson's recklessness the State need have established only that Dawson did a wheelie on his motorcycle, since a wheelie by its very nature is a reckless act. This the State did. Because the offense of reckless homicide was premised on Dawson's wheelie, and not on his intoxication, and the offense of OWI death was premised on Dawson's intoxication, and not on the fact that he did a wheelie, the two offenses are not the same for double jeopardy purposes and double jeopardy is not offended by punishing Dawson for each.

### B

Nevertheless, it is plain both of Dawson's convictions ultimately arose from the death of one individual following a single mishap. It is equally plain trial courts and attorneys throughout the State have long relied on *Carter* and *Drossos* for the proposition that a defendant may not be punished for both OWI death and reckless homicide. *See, e.g., Powell v. State* (1991), Ind.App., 574 N.E.2d 331, 334, n. 4. Given the compelling moral chord Judge Garrard voiced when he declared that "[o]nly one homicide was committed and only one sentence may be imposed[,]" and given our strong interest in maintaining stability and precedent in the law, we choose to favor the result reached in *Carter* and *Drossos* that one may not be punished for both OWI death and reckless homicide arising from a single death. Although double jeopardy does not forbid Dawson from being punished for both OWI death and reckless homicide under these facts (*i.e.*, when recklessness is not predicated upon intoxication), we hold Indiana law does impose such a prohibition.

### C

The State urges us to follow *Carter* and instruct the trial court to vacate one of the sentences, but not one of the convictions. It fears that if one of the convictions is vacated, those future appellants who successfully challenge their remaining conviction on sufficiency grounds will walk away scot-free. Dawson reasons that if we do not instruct the trial court to set aside one of the convictions, we would be punishing him twice for the same offense inasmuch as the stigma of a conviction is punishment all by itself. Neither argument convinces us.

Because double jeopardy prohibits multiple punishments for the same offense, and because *Carter* and *Drossos* were decided on double jeopardy grounds, the *Carter* and *Drossos* courts were compelled to vacate at least one of the sentences and/or convictions in question.[9] Dawson's case,

---

8. Although there were, of course, no jury instructions in this case, nor any closing argument, we were able to determine the State's theory of reckless homicide by referring to the charging instrument and the evidence presented.

9. We use the term "and/or" because the two courts gave the respective trial courts different instructions. The *Carter* court "remanded to the trial court with instructions to vacate one of the sentences." *Carter, supra,* at 1048. The *Drossos* court "remand[ed] with instructions to vacate the three reckless homicide convictions" in the first paragraph of the majority opinion and "remand[ed] to the trial court with instructions to vacate the three *convictions* for reckless homicide" in the final paragraph of the majority opinion. *Drossos, supra,* at 2, 7 (emphasis added).

on the other hand, raised no constitutional double jeopardy prohibitions; accordingly, double jeopardy does not require that we vacate one of his convictions and/or sentences. Indiana case law requires only that Dawson not be punished for both OWI death and reckless homicide convictions arising from the same accidental death; it does not forbid Dawson from being punished for, say, reckless homicide and operating a vehicle while intoxicated (OWI), a lesser-included offense of OWI death.

In fact, we find that substituting OWI for OWI death is a satisfactory outcome here. It is evident the State has a strong interest in seeing that those individuals who break its laws are held accountable for their irresponsible behavior. Let us not forget that Dawson's irresponsible behavior cost Marc Billingsley his life. Not only is a complete vacation of one of the convictions not required by law, it would depreciate the seriousness of the tragic event. On the other hand, the law requires Dawson not be punished for both OWI death and reckless homicide. We feel these two competing interests are properly balanced by vacating Dawson's OWI death conviction and replacing it with an OWI conviction. Because OWI is a lesser-included offense of OWI death, it is plain Dawson was guilty of OWI and was put on notice that he could be punished for it.

### Conclusion

Pursuant to Ind.Appellate Rule 15(N), we remand the cause to the trial court with instructions to vacate Dawson's OWI death conviction, enter an OWI conviction in its place, and sentence Dawson for the OWI conviction. Dawson's reckless homicide conviction is affirmed, as are his resisiting law enforcement and reckless driving convictions.

Affirmed and remanded.

NAJAM and HOFFMAN, JJ., concur.